Ms. Bott, whenever you're ready, we'll be glad to hear from you. Thank you and good morning. May it please the Court. Cori Bott on behalf of Appellants, Freight Drivers and Helpers, Local Union No. 557 Pension Fund, et al. MEPA's legislative purpose was to prevent employers from withdrawing from multi-employer pension plans without paying their share of unfunded vested benefits, thereby threatening the solvency of those plans. MEPA's a remedial statute, which should be construed liberally in favor of protecting participants of employee benefit plans. This Congressional intent to protect the assets of employee benefit plans for the benefit of their participants and beneficiaries is manifested in the statute. Specifically, Section 4221A-3A of ERISA, which can also be found at 29 U.S.C. 1401A-3A, provides that in disputes between employers and plan sponsors regarding the imposition of withdrawal liability, that any determination made by that plan sponsor is presumed correct. That statutory presumption can only be overcome by the party contesting that determination by a preponderance of the evidence. And placing this burden of proof on the employer is consistent with public policy of MEPA, and it's logical. As the Supreme Court explained in upholding MEPA's constitutionality in Concrete Pipe, it's entirely reasonable to burden the party more likely to have information relevant to the facts about its withdrawal from the plan, with the obligation to demonstrate that facts treated by the plan as amounting to withdrawal liability did not occur as alleged. These series of presumptions prescribed by MEPA are important. They were intended by Congress to ensure the enforceability of employer liability. According to MEPA's legislative history, in the absence of the statutory presumptions, employers could effectively nullify their obligations by refusing to pay and forcing plan sponsors to prove every element involved in making such determinations. Let me ask this. So I get that. I mean, I understand this statutory scheme, and I also recognize that the arbitrator seemed to be all over the map when it came to deciding who had the burden of proof. But your opponents on the other side suggest that this was not a close case, and that regardless of who had the burden, it was clear by more than a preponderance of the evidence that withdrawal liability was not a purpose of the transaction in this case. If that's so, why does the burden – why does it matter what the arbitrator said about the burden? Well, I think for the reasons that were just given, that the congressional – I guess you don't concede that this was not a close case? Well, nowhere in the 123-page opinion does the arbitrator say that Penske met its burden of proof, shouldered its burden of proof, or overcame the presumption of correctness in favor of the funds by a preponderance of the evidence. That's the statutorily mandated burden of proof. Well, he may not have said the magic words, but if the record is clear that the evidence supports that conclusion, and I think at some point earlier in these proceedings he did lay out the appropriate burden in an earlier order, and the fact that he may have flipped and flopped in the proceeding itself, if the evidence admits of only one conclusion, why does it matter? Well, the arbitrator – Penske was unable to prove, and the arbitrator was unable to discern a principal purpose of the transaction. Well, that's different than showing that a principal purpose was not withdrawal liability. I think the former, your opponent would say, is irrelevant. It doesn't matter. What matters is whether or not a principal purpose was evading withdrawal liability. Consistent with the statute, the funds position that Penske did evade or avoid withdrawal liability by virtue of the transaction is presumed correct. Nowhere in the award does the arbitrator find that Penske shouldered that burden by proving an alternative purpose. And in fact, the arbitrator fails to discern any alternative purpose. The purposes that Penske proffered to overcome that burden were deemed to be insufficient. If you look at page 130 of the joint appendix, Penske was unable to establish, and the arbitrator was unable to discern any principal purpose of the transaction. The award describes an economically irrational transaction with which – What's at 130 of the joint appendix? Yeah, page 130. What is that? What is that? That's the arbitrator's award. Okay. That's in the discussion and opinion section. The award describes an economically irrational transaction with which Penske continued even after the value that Penske would receive for leaseway declined significantly. And in abrogation of the statutory presumption that we've discussed, the arbitrator failed to afford the trustee's determination that a principal purpose of that transaction was to evade or avoid liability, the presumption of correctness it was due. But Penske failed to overcome that presumption because the principal purposes offered to rebut that presumption were insufficient. If you look at that section of the award, according to the arbitrator, it was not clear why Penske chose to go forward with the transaction. In fact, the arbitrator goes so far as to say – to discuss each of the principal purposes offered by Penske to overcome the statutory presumption, finding none of them sufficiently supported by the evidence. Indeed, the arbitrator claimed that it's not necessary to conclude why Penske chose to go forward with an economically irrational transaction. And this rejects the reasoning in the Third Circuit in the Sherwin-Williams case where the Third Circuit said that that is precisely the type of determination to determine what, in the overall context, were the employer's principal purposes for undertaking a transaction at issue that the arbitrator is tasked with making. And in this case, appellees don't disagree with the funds on the statutory presumption or the burden of proof and the requirement posed by Section 4221A3A of ERISA. At page 15 of their appellate brief, they say, consistent with the concrete pipe rulings, arbitrator Jaffe should have ruled that Penske had the burden of proof as to any factual determinations by the Funds Board of Trustees. And that the arbitrator should have presumed that any such factual determination was correct unless Penske could disprove the determination by a preponderance of the evidence. However, without any reference or citation in support, Penske concludes that that is what arbitrator Jaffe did. It's no surprise that there's no support for that conclusion because none exists in the record. Well, okay, so under your reading of the statute, unless the party being asked to assume the withdrawal liability puts forth a legitimate principal purpose for the transaction, the presumption is that it was engaged in to avoid withdrawal liability. Is that your position? No, the presumption would be the correctness of the trustee's determination that a principal purpose of the transaction was to evade or avoid liability. As soon as Judge Diaz asked you a while ago that the Penske case is really strong, what is your best argument that it isn't? Well, in addition to the fact that the arbitrator was unable to discern a principal purpose of the transaction, any principal purpose, and aside from the fact that the appellant, it's the appellant's contention that the fact that the arbitrator was unable to discern and Penske was unable to offer any principal purpose and that they're entitled to the presumption of correctness of their finding, there were numerous findings of fact that were in error that were listed and that were described in detail in the fund's briefs before this court. Of course, most significant among them is the fact that there was no principal purpose determined by the arbitrator of the transaction. Let me ask you about that because the appellee's brief suggests that you're wrong about that. First of all, they say there's no requirement that you find a principal purpose other than avoiding withdrawal liability, but then they point to the testimony of Mr. Angelbeck who testified as to the motivations of Penske in entering the transaction saying that the reason why they sold Leaseway was because Leaseway was, quote, not a core business and it didn't enhance any of Penske's core businesses. Then they go on to quote from the arbitrator's decision explaining that. So is it really accurate to say that the arbitrator did not find a principal purpose other than avoiding withdrawal liability? When the arbitrator and his award reviewed the alternatives that Penske provided, the arguments that Penske made to overcome the presumption of correctness of the fund's claim that a principal purpose was the evasion or avoidance of withdrawal liability, the arbitrator was unable to discern whether any of those were a principal purpose. And appellants return to Sherwin-Williams where the court said that's precisely the type of decision that the arbitrator is required to make. Did they misquote that? I'm sorry. The appellant's brief quotes the arbitrator's decision and says that Penske's principal motivations in this transaction looking to sell Leaseway were business motivations, and then they talk about or he talks about that the transaction appeared to provide a reasonable path to total divestment. I'm not going to read the whole thing, but they quote from a paragraph of the arbitrator's order which suggests that he did find a principal purpose other than avoiding withdrawal liability. Is that wrong? That is wrong. Nowhere did the arbitrator – I'm sorry. If I could reference. I'm looking at page 23 of the appellee's brief, and they're citing to JA's 123-124, which I guess is part of the arbitrator's decision in this case. I'm sorry. Page? JA 123-124, page 23 of the appellee's brief. I'm sorry. itself of Leaseway. In Sherwin-Williams, the court says that it's only required that a principal purpose of the transaction be to evade or avoid withdrawal liability. It is logical and usually probable that there's another reason for selling the company. I don't disagree with that, but then earlier in your argument, you seemed to suggest that in the absence of a legitimate principal purpose, the only conclusion would be that the principal purpose was to avoid withdrawal liability. Now you're saying that you can have two – you can have a legitimate principal purpose, but that doesn't necessarily exclude another purpose being the avoidance of withdrawal liability. Well, appellant's argument is that absent a principal purpose, then the presumption of correctness of the trustee's determination that the transaction was undertaken to evade or avoid withdrawal liability should prevail. But that's not – if a principal purpose of the transaction was to evade or avoid withdrawal liability, it doesn't foreclose that there could be another principal purpose of the transaction. But in this case, the arbitrator didn't find that there was any principal purpose of the transaction. All right. Before you sit down, do you agree that the judge erred in awarding the attorney's fees because he didn't follow the local rule? I believe that the judge erred and that the attorney's fees were not reasonable and that one objective way to determine reasonableness would be to apply the local rules, and I believe it was Appendix A, in determining those attorney's fees, which were not complied with, nor were the attorney's fees substantiated in a way that would comply with that rule. All right. Thank you. Thank you. Mr. Levin. May it please the Court, my name is David Levin, and I represent the appellees here, Penske Logistics and Penske Truck Leasing. And the arbitrator – I hate to read, I don't normally do it to a court, but the arbitrator ruled, it's at JA0119, Mr. Angelbeck testified credibly as to the motivations of Penske in entering into the transaction. His testimony that the evasion or avoidance of withdrawal liability was not a principal purpose or even a non-principal purpose of the transaction is supported by a number of record facts. The arbitrator found, as a matter of fact, that the principal purpose, and we know that there can be more than one principal purpose, was in order to get rid of, if you will, a non-core business that didn't enhance any of Penske's core businesses. The – this notion – Of course, that's not inconsistent with a finding that another principal purpose would be the evasion of withdrawal liability. It's true that you can have, Your Honor, that you can have more than one principal purpose, but the arbitrator found that the preponderance of the evidence demonstrated that there was no principal purpose here to evade or avoid withdrawal liability. The section, or this reference to Sherwin Williams and what the court said in Sherwin Williams, the court said, to quote, the arbitrator opined that in the overall context, the evasion or avoidance of withdrawal liability was a principal factor. The arbitrator's task is to make precisely that kind of determination, to determine what, in the overall context, were the employer's principal purposes for undertaking the transaction. And what the arbitrator found, close quote, what the arbitrator found in our case is that the principal purpose was to focus on its core – for Penske to focus on its core businesses and not on a business that wasn't a core business and did not enhance its own core businesses. The – this section, this J, it's page 130 of the record, the appendix, pardon me, this business about where the arbitrator said, I don't have to decide. Two points, if you will. First of all, I submit to you that as a matter of law, what has to be found is whether a principal purpose is to evade or avoid, not whether there's another principal purpose. But as a matter of fact, in this case, after reading 1,600 pages of transcript of the arbitration and looking at – I mean, the arbitrator was there the entire time and asked a lot of questions. And after writing an opinion of 123 pages, that it's – it was clear that the arbitrator concluded that Penske's motivation, its principal purpose for this transaction were business transactions. When he – arbitrator writes that he couldn't – he didn't have to decide because he'd already found, as a matter of fact, that the preponderance of the evidence supported a conclusion that Penske approved. It wasn't evading or avoiding, wasn't the principal purpose. If you look at the language that he uses and you look at Penske 72, it's one of the exhibits. And that's the language that's in Exhibit 72. And Exhibit 72 is – that section is called Transaction Rationales. In December of – because what the arbitrator wrote is he didn't know why he – and he said he knows why Penske did it, but he doesn't – he said he didn't have to choose why it was that Penske continued even though the value dropped. In December of 2003 – and I say this to you because this is all written in what actually he's writing from. He didn't quote, but he's writing from it, and he examined Mr. Angelbeck about it. In Exhibit 72, at that point, it was December 2003, the note and value had dropped to 25 million. It says right in the presentation that the note was 25 million. And then Penske wrote down its rationales for the transaction, the rationales that are recited by the arbitrator. And Penske insisted at that point that PLG, the buyer, perform four acts. They related to a goodwill right of refinancing. They got the refinance. They got $180 million line of credit from Credit Suisse that they improved their insurance. And I forget what the fourth was. But all of them were – oh, that there be more capital input into PLG. And the owners, pardon me, input $10 million. So it was all known. I have a question. Sure. If the arbitrator has the burden of proof wrong, or he's inconsistent at least in his applying the burden of proof, how can we have any confidence in his conclusions? I'm sorry, how can we have any confidence? In his conclusions. Well, if I may, first of all, in July of 2012, the arbitrator wrote down that's his ruling on what the burden of proof was. And I submit to you that – Did you understand my question? If he got it wrong? If he's got the burden of proof wrong, how can we have any confidence in his conclusions? And I want to answer you, but I'm not sure that I understand when you say that he got the burden of proof wrong. If it's a hypothetical. Okay. No, I understand that. The burden of proof was clear preponderance. I'm sorry, it was preponderance of the evidence. Do you mean that he didn't understand the preponderance of the evidence? He had to prove a fact by preponderance of the evidence. That's what burden of proof is. Oh, okay. Let me say it back to make sure I understand your question. If the arbitrator had written, Penske doesn't have to prove – If you don't understand the question, don't try to – I'm sorry. Because you're going to say they're wrong. Forgive me. Go on with your argument. I'm sorry. That's all right. Go ahead with your argument. I mean, the arbitrator found, as a matter of fact, that the preponderance of the evidence supported Penske's position that a principal purpose wasn't to evade or avoid. And if you read the record, a principal purpose was that. I'm sorry that I didn't – On that, so in the opinion, the arbitrator's opinion, just by way of example, he says at one point, quote, I am unable to find that withdrawal liability was a principal purpose of Penske selling leaseway to PLG in the form of a stock sale. That suggests that he inverted the burden. And if that was the case, what confidence do we have in the results? Now I understand the question. What he was saying was – You are smarter than I am. What he was really saying was what the statute says. The statute doesn't say – that's to say 4212C, 29 U.S.C., 1392C. The statute doesn't say you have to prove the negative. The statute's about the positive. The statute says if a principal purpose of any transaction is to evade or avoid liability under this part. And that's what he said. He couldn't find that a principal purpose was. All he was doing was reciting the statute. If the statute had been written the other way around, that would be one thing. But what you referred to earlier as flipping and flopping, I think, it's how his language is used. But he uses the language that's in the statute. And if you will, to say that the arbitrator didn't understand the burden of proof would presume, then, that the arbitrator didn't understand it with respect to all the issues that were presented. And one of the issues that was presented was the question of whether or not there had been actual partial withdrawals because of the drop in CBUs. And the arbitrator wrote and he said, here's what the burden is. And he said the burden, it came out equal. He said, although one side couldn't prove it and the other side couldn't prove it because of the presumption, the fund wins. We didn't take that issue up on appeal, but you'd have to conclude that the arbitrator understood the burden for half of his opinion, but he forgot it for the other half. And I submit to you that reading this 123 pages, that you have to conclude that the arbitrator understood. The question was, does a preponderance of the evidence demonstrate evading or avoiding or doesn't it? And he understood that. And it's presumptively correct. That's to say his determination that a clear, that a preponderance of the evidence supported the conclusion that evade or avoid wasn't a principal purpose is presumptively correct under the statute. But at KA 189, he uses words such if on the other hand and then if on the other hand. It's just kind of flipping back and forth. I can't tell you that it's a work of literary art. I can tell you that if you read the 100, and I'm sure you have, if you read his ruling, he concluded it wasn't a close case, that far and away, in fact, he even states that the fund's case in trying to rebut was so weak that he questioned the good faith of them doing it. I'd like to, if you will, address, I mean, a few more questions on the principal purposes, I'm happy to do it, but I have a little bit of time and the issue that we're supposedly here on that was warranted oral argument is the question of whether or not the judge should have stayed the case and remanded to the arbitrator. And if you would, if it's all right with you, I'd like to submit to you that in fact, whether the district court should have remanded is, first of all, the question, what's the standard of review? And it's got to be an abuse of discretion if he didn't remand. And I'd like to say that on the, I filed a 4221.9 motion to modify because I said that the, with the arbitrator, because I said that the, I thought that there was a format problem, a form problem in the award that the numbers weren't written out, and that he didn't actually write in the award how much had to be paid. And also, when I wrote it, I thought that it was, I don't think it was really a question about the interest rate, except that he should put it in, to say the dollar amount. And in addition, in the award, and I say this because this was what we were supposed to have, his oral argument on this issue. This is, the pension run asked for oral argument because this was the issue that warranted it. And the arbitrator wrote in his award, in the body of the award, that we were entitled to, because of the funds abuse of the discovery process, that we were entitled to attorney's fees. And he said for the second set of depositions. And in the award itself, at the end, he writes the initial ones. And the initial ones cost more money, because, and we thought he really meant the first, the second one, which cost less money. So we asked him to put in that it was the second one, not the first one, because we weren't trying to overreach for the amount of money involved, considering the amount of money involved in the case. We wanted it clear. And he didn't respond. I mean, it's 23 months, 22 months, since we filed that motion, and we never got a response. But the fund had opposed it on the grounds that it wasn't a proper motion. And so whether it was or wasn't a proper motion, I mean, I obviously thought it was because I filed it, it wasn't ever, wasn't resolved. The district court looked at the issue, and on interest, if you look at the August 23rd ruling by the court, the court had concluded that the arbitrator was awarding a 10%. But the court thought that was too high. The district court thought it was unreasonable. And there are only two choices about interest rates here. It's either 10% or a regulatory variable rate. My client gets less money with the variable rate and more money with the 10%. The district court concluded that 10% wasn't reasonable, and he awarded at the variable rate, the lower amount. We didn't take that up on appeal. The fact that a year and a half expired, really no need for the judge to have stayed the proceedings, was it? Say again? The fact that a year and a half had expired, there was really no need for the judge to stay the proceedings. I think that's absolutely right. And a remand here, the only upshot, if you will, result of a remand, is that my client might get more money. And it's not that I'm standing before, why? Because the interest rate that the district court judge chose was the lower rate. If it went back to the arbitrator, the arbitrator, it's not a, if you will, it's not a do-over. He can only say, I meant 10 or I meant, the judge, thought that the arbitrator had it awarded at 10, and he said 10 was unreasonable. So we just have it come back to the judge again. If the arbitrator said, no, I really meant 10, go back to the judge again, the judge would say 10's unreasonable, and we'd be left right in the same position with the same amount of interest, no difference. And on attorney's fees, there was a, I thought in the award, in the ultimate award, he said initial, it would have been more attorney's fees. We were looking for the lesser amount, as I said, because I thought that's really what he meant. So the only thing that happened, go back to the arbitrator, and the arbitrator could say, no, I meant the higher amount. So it isn't that I wouldn't want to get more money. It's just that it's been 23 months. We don't have any way of making the arbitrator rule, and we would just sit around. And so, if you will, I think that the district court did not find the award ambiguous, and there was no reason to stay. And the only one, if you will, who's harmed by the failure of it to go back to the arbitrator might be us. That's to say my client, because there's nothing here about getting less money. It's only the possibility of getting more money, and we're not asking for that. We're asking for an affirmance of what the district court ordered. Is there an argument in this case about the district court's finding as to the attorney fees and their reasonableness? No, if you will. First of all, the court found that Guideline B, there's a guide, in Maryland district courts, there's a guideline. And Guideline B doesn't, by its terms, doesn't apply. It only applies when you have statutory submission for fees. This was a sanction. And we offered, if you will, to take the, if there was any question about reasonableness, we offered in the court filing that we would take the lesser of what we billed our client and what they billed their client, what the fund billed its client, figuring that they weren't going to say their own was unreasonable. They didn't take us up on the offer. And if you, the arbitrator found, the arbitrator concluded it was a reasonable sanction. The district court, but he didn't, not the dollar amount. Not the dollar amount. No, no. That's fine. The question is, though, as between those two amounts, if the district court simply picked one, how do we know that even that lesser amount was reasonable? Well, he found that the sanction was appropriate. That's what the district court. He didn't say very much. But there's no, I don't know that there's a requirement for him to say a lot. But the conclusion of the district court was that the sanctions were appropriately assessed, and the district court concluded that it was appropriate to assess, if you will, the lesser of three known amounts and a fourth unknown amount. Unless you have questions, I'd like to thank you very much for your time. Thank you, Ben. Ms. Bott, you have some time remaining to reply. Thank you, Your Honors. Appellees appear to would have this court ignore the statutorily mandated requirements of Section 4221A3A of ERISA. The arbitrator's failure to make a determination of a principal purpose of the transaction, his failure to properly attribute a presumption of correctness to the fund's factual determinations, and his failure to properly allocate the burden of proof constitutes a mistake of law, such that the award should be vacated. And the arbitrator's acknowledgment that the transaction made little economic sense substantiates that in review of the entire record reveals mistake has been committed, and constituting clear errors such that the district court should be reversed and the arbitration award should be vacated. For the reasons set forth in appellant's briefs and those articulated today, the Freight Drivers and Helpers Local Union Number 557 Pension Fund requests the reversal of the United States District Court with remand to vacate the underlying arbitration award. Thank you. Thank you. You want to keep going? Do whatever you like. You want to keep going or take a break? I'm okay. All right, we'll keep going. All right, thank you. We'll come down and greet counsel and then go into the next case.
judges: William B. Traxler, Jr., Albert Diaz, Henry F. Floyd